The first case on our calendar is Village Green at Sayville versus the Town of Islip and others. Council. Good morning, Your Honor. Mark Cuthbertson for the appellate Village Green at Sayville, LLC. Good morning, Your Honor. Timothy Hill. Good morning, Your Honor. Timothy Hill, Messina Perillo and Hill for the appellees. Thank you, Mr. Cuthbertson. You may proceed. Yes, Your Honor. This is a case involving housing discrimination. and specifically the issue of standing. And as argued in our brief. If the pleadings are construed liberally as they should be on a motion to dismiss we believe we have alleged that there was a final decision in this case and therefore there is standing. If the court decides that there was not a final decision, we believe that the futility exception that this court has articulated under the Sherman case applies here. What's the status of the Article 78 proceeding? It is still pending, Your Honor. Why is it pending this long? I don't know. Quite honestly, I'm not handling that. I know the judge assigned has since left the bench and there were delays relative to COVID, but I haven't gotten a recent update. All right, continue. As I mentioned, this court's precedent in Sherman should apply. The town argues, if the town's argument is accepted, Sherman is really relegated to only being the law of that case because no other cases rise to the level of Sherman. We started this application in 2006 and were ultimately... Mr. Cuthbertson, your application in 2006 was granted and what's happened since then, right, is that there have been proceedings in the past couple of years as to which there's been no final decision on the face of it. There was a motion that was not seconded. Sherman v. Town of Chester went on for a decade with the repeated changing in the zoning ordinances by the town. That's a very special circumstance. It could happen elsewhere, but I see this as really not comparable. Why do you think Sherman controls? I think Sherman controls here, Your Honor, because there was an affordable housing component of the approval in the beginning in 2006 when that application was granted. And then essentially the town sent us on a years-long fool's errand to find a connection to an off-site sewage treatment plant, which was unachievable. And the town actually helped, along with the school district, got in the way of getting easements for that. So ultimately the applicant then had to go back to the town and say, could we get rid of this off-site sewering requirement now? And in an application that was very much similar to the original application, except for we went from an ownership component to apartments. So there is a continuity here, and that's why I believe Sherman applies. I also believe Sherman applies because many of the hoops— Excuse me a second, but the original approval provided that in the covenants and restrictions that the development had to be connected to the off-site sanitary treatment plant, right? They haven't changed the requirements, have they? Yes, they have. In this application, there would be a sewage treatment plant on-site because it can't be developed conceivably with off-site. Isn't that what you're suing to remove the C&Rs? Isn't that what you're suing about in this case? No, Your Honor, we're suing about housing discrimination under the FHA. And the animus that was a part of this process and standing really under this court's precedent in Mahaney management, which the lower court got completely wrong the facts of Mahaney. There is a liberal standard, we believe, for standing— Are you saying the finality requirement doesn't apply to an FHA claim? It does, but we believe we meet the standard that was articulated in Mahaney. And the lower court was fixated upon a final decision when in Mahaney there wasn't a final decision and articulated that in Mahaney there had been a zone change from multifamily to single family where no such zone change existed, Your Honor. Tell us why, in your view, this was a final decision. This is a final decision because there was a non-vote, and as articulated by the town attorney, there was going to be no further proceedings on this, and that was confirmed in a letter by— Is there anything that— He didn't respond to your letter when you asked him to confirm the substance of the conversation. I think based on the context, Your Honor, of the runaround of years here, the delays, it was clear that the town was not going to do anything else under these circumstances. Is there anything that puts a time limit on when the town has to decide on an application? I don't believe so in this context, Your Honor. Counsel, if you had a choice, would you prefer to win this case on finality or futility? Finality, Your Honor, under Mahaney, I think, is— and other like projects that will come before municipalities and will send the message that you can't dig in your heels, particularly when there is, as alleged here, a racial— So your application for a modification was 2014? Yes, Your Honor. And it's been almost eight years then, correct? Correct. Okay. Counsel, if we rule in your favor, what rule would you have us announce? What limiting principle would we apply to the finality requirement? It's an interesting question, Your Honor. I think that if there were circumstances similar to this one, and in Mahaney, where there have been sufficient efforts by the plaintiff, and they've shown that while they may not have received a final decision, there's been a concrete injury, and the defendant's refusal to adopt a land-use change will lead to a disproportionate impact when it comes to minority housing. So the rule you proposed is sufficient efforts, which sounds to me very fuzzy. Judges don't like that. Judges like things that are more easily applied than sufficient efforts. Yeah, I mean, I think—and mine is not—that wasn't as articulate as I would like it, Your Honor, because I had not thought about your question in advance, but I think based on the facts of this case that there have been enough efforts to go towards a final decision, and in essence, there was a final decision by this non-vote. Are there cases that say at some point a non-vote becomes a no-vote? We cited a New York precedent on that case, Your Honor, a case called Tall Trees that has a history to it, and obviously this court is not bound by that precedent, and there was statutory change in light of that case, but I would say that the rationale in that case— That case involved an appeal? It involved a zoning board of appeals case in the town of Huntington. Does it matter? Do you think that it was an appeal as opposed to, as we have here, an application in the first instance? I don't, Your Honor, because I think it strikes at the same principle of a municipal gamesmanship that's being played in order not to make a decision. Counsel, you have reserved three minutes for rebuttal. We will hear from the village, the town of Ifrit. Good morning, Counsel. Good morning, Your Honors. Thank you. So, Mr. Cuthbertson talked about both of his issues. I think Your Honor asked him to pick which was the stronger. I'll just take them in the order that they're presented in the briefs. So, at some point, does a non-vote become a no-vote? I mean, here it's seven or eight years. Well, in this instance, after the non-vote, the Article 78 state court proceeding was immediately commenced within two weeks of that non-vote. But my question is, at some point, put aside the Article 78. One of my concerns is that a town can forestall any kind of litigation, federal litigation, simply by not voting. And so my question is, at some point, let's say 10 years go by, 12 years go by, does a non-vote effectively become a no-vote? There's no statutory provision. But didn't the town attorney tell the parties that that exactly was what the no-vote meant? There's a representation that that's what was communicated, but the town attorney was not binding the board. He had a parent. Didn't he have a parent authority to bind the board? No, the town, for this type of application, for a modification of a covenant restriction, the town board has the exclusive authority to issue that. Excuse me. The town's website says that the town attorney serves as legal counsel to the town of Islip, and his responsibilities include representing the town in all legal proceedings and litigation. Doesn't that look like a parent authority when he says it's fine? I don't think so, Your Honor, because the town can only act by a vote of its board. Even if it's not binding authority, isn't it pretty good evidence that the town intended this to be no? I don't think so. No one seconded the motion. Isn't that, in essence, a no? No, it's a non-vote. It may seem semantic. Mr. Hill, in your brief on page seven, you've also taken the position that the town has complete discretion in considering the application and may even refuse to consider it if it so chooses. Isn't that effectively what's happened here, and why shouldn't that be considered to be a final disposition, or at least to render any further activity futile? You say that may even refuse to consider it if so chooses. Well, that's not as applied specifically to this case. That's, in general, an application for a modification. Is that your position, that the town can just refuse to consider it indefinitely, and then no one can treat that as a final decision? No, not that it could do it indefinitely, but that in the first instance, having granted a C&R, it's not obligated to entertain an application to modify that. I'm sorry, I don't quite understand. You say that town has complete discretion in considering the application and may even refuse to consider it if it so chooses. What does that mean, then? That's meant to speak to the town's global authority in all cases, not as applied to this case, that applications to modify a C&R, there's no compunction to it. Why wouldn't they just vote no, and be honest about it, and just vote no? Because it's clear that's what they wanted. I don't know that that's clear that's what they wanted. No one would second the motion, and this way, the plaintiff can't go right or wrong, whether they've got a good claim or not, they can't go to court. It's a little troubling. Well, they've taken the position that it was a denial and are prosecuting that in their Article 78 proceeding, and that was commenced immediately after that non-vote. If that course had not been taken, either the applicant or the town may have revisited on either. Is there some principle that says the plaintiff can't do both, bring both an Article 78 and a federal litigation? Clearly, the federal litigation has moved a lot faster than the state court matter. That's certainly true. Is there anything that says they can't do both? No, but I think by taking the Article 78, the remedy for the lack of clarity of the status of the decision... Can they assert a Fair Housing Act claim in the Article 78? Did they assert that? Can they, or did they and can they? I don't believe they did. Can they bring in a Federal Housing Act claim in an Article 78? I don't know. I can't answer that question with certainty. Is the town precluded from taking any further action during the pendency of the Article 78? I mean, could they revive and act on the application for modification? It's not precluded, no. But it hasn't happened? It hasn't. It hasn't been asked to either. Are you prepared to concede, counsel, that it would be futile for this project to continue to apply to the town board, which wouldn't even hold a vote on it the last time it came up? Definitely not. The futility argument under the Sherman case, it's not remotely comparable. And I understand the appellants to be arguing that our position is that you have to identically match the circumstances in Sherman. And that's not our position at all. Sherman did establish a very high bar. Can you, in good faith, tell us that if the plaintiff reapplied, tried again, that there's a reasonable chance it would prevail? There's a reasonable chance. But I can't predict what the board would do at this point. They approved a different project on the same day that they refused to take a final vote on this project. Isn't that correct? That's correct, yes. And what was the difference in the two projects, if you could summarize briefly? Well, in this project, there was a change of zone that had already been granted to this applicant. To the Village Green or the other one? To this one, to Village Green. So they weren't seeking a zoning change? They had already obtained a change of zone from a business. So this is not a parcel that originally would have been permitted to have any residential development on it. So the 2006 application that was granted, that's what they came back in 2014, seeking to modify significantly. Not only in removing the covenants and restrictions, but proposing a different project altogether that had higher density. And that was going to have an on-site treatment facility. So, you know, it was taken on its own merits. That's certainly a different circumstance than the other application that happened to be on that day. There's applications all the time before and after this one that have been granted or denied. So is your view that this was so substantially different that even though the property had gone from being zoned business to residential, this was a different project? And so looking at the time that has passed since its original presentation, we ought to start in 2014 and not in 2006. Is that right? Yes, I don't think you can bootstrap the prehistory onto what's really a confined period from 2014 to 2016 with, you know, the application in 2016 introducing a very different project. I think I read the town meeting minutes and what the residents were most concerned about, it seemed to me, was rental versus home ownership. Is that a standard that the board applied? Do they require home ownership as opposed to rentals as a basis for granting the petition? That was the covenant restriction that was conditioned in 2006. But by the time this came up, was there a standard that any applicant had to have home ownership as opposed to rentals? Was it unsaid but there? I'm sorry, I'm not sure I understand the question. There's no requirement in the town code. The law of this parcel based on the covenant restriction that this applicant agreed to in order to get the substantial change of zone from a business district, that applied and did impose that condition. It didn't impose the condition of ownership as opposed to rental? That wasn't part of the zone change, was it? Yes, it was. Show me where that was. Or you can show me. I'll give you a moment after we hear rebuttal. Why don't you continue with your argument? Sure. So just briefly, the Tall Trees case, as Judge Chin indicated, that case was immediately created a legislative amendment. And what that legislative amendment clarifies is that a tie vote, and in here we don't have a tie vote, we have a non vote, that a tie vote would be deemed a denial. Solely when the decision at issue is being issued by a body acting in its appellate capacity and jurisdiction and not in its original. That's very clear in the law and the statute. Why should that make a difference, really? I mean, it's the functional equivalent. Well, I think for the purpose of finality, you're talking about, you know, the ultimate decision. So if in the first instance, there's a tie, there's a remedy by going to, say, from the building department to the zoning board of appeals. Is there any such remedy here? Is there any such remedy here? In other words, there's a non vote. Can they appeal anywhere administratively? No, other than to return to the town board, seeking a further vote. The town attorney said it's not going to be on the agenda anymore. Didn't he say that? Or something like that? Something to that effect, you know, in the immediate aftermath of that hearing. But that was, you know, that was two weeks time. And the issue was not developed beyond that. They immediately chose to pursue the Article 78. Again, that didn't preclude them. There's nothing that says filing the Article 78 precluded further action by the town, is there? No, there isn't. But I'm not aware of any request by the applicant either to the town to revisit the vote. Thank you. I will give you a moment at the end of rebuttal to tell me where in the record it required this project to be home ownership as opposed to rentals as a condition of the zoning change. Okay. Okay, thank you. Thank you, Mr. Casperson. Thank you, Your Honor. Just three quick things. Listen, the key difference between the zone change that was approved on the day of my client's non-vote is that it was in a minority area. It's in the area of the town where minorities are and where most of the housing of this type of apartments have been built. Mr. Hill said something to the effect of there is complete discretion not to make a decision here. And I think this ties into our takings claim. There is a takings claim here and that the town by this sewage treatment plant, off-site sewer plant requirement, has effectuated a taking. So I don't think there is complete discretion. And I would just say that I don't believe that a fair housing claim can be made in an Article 78 proceeding, that such a claim would not be recognized in that proceeding. Is it your memory or knowledge that the requirement of ownership as opposed to rentals was a condition of the zoning change? I believe it was. So Mr. Hill is going to point me to where on the record it was. So how do you deal with the fact that you had changed the terms of the project? That was a part of our application. And, you know, again, our position is that there was an affordable housing component of this project originally, and there was an affordable component of our apartment project. In both instances, there was a set-aside that is required by the town, a 20% set-aside. So in both instances, there is an interest and it is fundamental to our fair housing claim. As I said, I read the transcript of the meetings, and it seemed that the townspeople, in addition to objecting to rentals, objected to the set-aside for senior citizens. What was that all about? I don't recall that, Your Honor. I don't recall that aspect of it. We highlighted in our papers, obviously, the rental versus ownership dichotomy and the absence of rentals and projects of this type in the Segal area of the town. They talked about driving. They didn't want old people driving on their streets. Yeah, people say very silly things in those settings. Could I ask one further question, please? Mr. Cuthbertson, do you agree that the pendency of the Article 78 proceeding didn't preclude any further action either by your client requesting action by the town or the town in casting a vote, putting it on the agenda and taking action? Yeah, I mean, the town could, I guess, moot the Article 78 by taking action. My client did not feel that any request of the town, based on the communication its attorney had with the town attorney, that any further request of the town was going to go anywhere. So you could, but you have not brought this application back? I don't. Based on that communication from the town attorney that basically said it was final, what would be the use of doing that, I guess, is my client's position. Well, that's the definition of a futility defense. All right. Thank you. Mr. Hill, do you have the citation for me? Mr. Hill? Yes. The citation in the record? Your Honor, as I think Mr. Cuthbertson confirmed, there's no dispute that the owner occupancy, as opposed to rental, was the explicit condition of the zoning change in 2006. It is in the record. It's in the complaint itself, at page 23 and page 24 of the appendix, where in the pleadings, that is stated by the plaintiffs. So that would have been a basis to turn down the application, if that were the basis. But of course, there was no turn down. Well, that's the condition that they voluntarily agreed, among others, to accept in exchange for the significant benefit of converting this from a business district to a residential district. Between 2006 and when they brought this application back in 2014 to modify and undo the very conditions that they had agreed to, there had been a housing crash in 2008 and other issues that have no control or responsibility of the town. But they came back seeking to undo the very conditions that they had agreed to in the first place. All right. Thank you. And that's the application that's being challenged here, not the 2006 application, which was a grant of a significant benefit to them. Thank you very much. We'll turn to our next, we'll reserve decision on this case.